IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWINA FRANKLIN, Pro Se** | ( |
| | ( |
| **Plaintiff** | ( |
| **v.** | ( |
| | ( |
| | ( |
| | ( |
| **THE JERSEY CITY HOUSING AUTHORITY** | ( |

In 1968, Congress enacted the Fair Housing Act of the United States to provide, within constitutional limitations, for fair housing throughout the United States." Sec 801 [42 U.S.C 3601].

Statutory Background

    I.    The Department of Housing and Community Development

1.   "The Department of Housing and Urban Development (HUD) is responsible for national policy and programs that address America's housing needs, that improve and develop the Nation's communities, and enforce fair housing laws" (U.S. Department of Housing and Urban Development, n.d.).  In 1988, Congress enacted Title VIII of the Civil Rights Act of 1968, commonly known as the Fair Housing Act (FHA), with H.R. Rep. No. 711, 100 Cong.  2d Sess. 15.  The Civil Rights Act of 1968 was established "following urban unrest of the mid 1960s and in the aftermath of the assassination of the Rev. Dr. Martin Luther King, Jr." Am.  Ins. Ass'n v. U.S. Dep't of Hous. & Urban Dev., 74 F. Supp. 3d 30 (D.D.C. 2014). According to 42 U.S.C. § 3601, the FHA is to "provide, within constitutional limitations, for fair housing throughout the United States." To accomplish this purpose, 42 U.S.C. § 3604(b) of the FHA made it unlawful to refuse to sell or rent:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

2.   In 1988, Congress amended the FHA, see Fair Housing Amendments Act of 1988, Pub.  L. No. 100-430, 1102 Stat.  1619, to include sex, familial status, and handicap as protected characteristics; 42 U.S.C. §§ 3604 to include (a) sex and familial status, (f)(2) (handicap).

3. To address severely distressed housing as well as homeownership opportunities, Housing Opportunities for People Everywhere (HOPE VI) was created by the Departments of Veterans Affairs and HUD, and Independent Agencies Appropriations Act, 1993 (Pub. L. 102-389), which was approved on October 6, 1992. "HOPE VI operated solely by congressional appropriation from FY 1993-1999. The FY 1999 appropriation included the congressional authorization of HOPE VI as Section 24 of the U.S. Housing Act of 1937. Section 24 was implemented in the FY 2000 Notice of Funding Appropriations (NOFA) and was reauthorized in conjunction with the American Dream Downpayment Initiative of 2003. Grants are governed by each Fiscal Year's Notice of Funding Availability (NOFA), as published in the Federal Register, and the Grant Agreement executed between each recipient and HUD" U.S. Department of Housing and Urban Development, n.d.

4. The Department of Housing and Urban Development awarded The Jersey City Housing Authority (JCHA) HOPE VI funding to revitalized Lafayette Gardens Housing Development. The terms of the grant can be found in the Notice of Funding Availability and executed grant agreement.

## Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over the action under 28 U.S.C. § 1331.

6. Venue is proper in this Court under 28 U.S.C § 1391

## Parties

1. At all times relevant to this complaint, Edwina Franklin is a beneficiary of 2001 Lafayette Gardens HOPE VI homeownership funding as defined by the JCHA's attorney Heather G. Suarez (document enclosed) as well as in a JCHA's Interdepartmental Memo.
2. At all times relevant to this complaint, Plaintiff Franklin is a person with a disability within the meaning of 42 U.S.C. § 3602 (h) (1).
3. At all times relevant to this complaint, Plaintiff resides in the Subject Property in Newark, Delaware. The Subject Property is a "dwelling" as defined by 42 U.S.C. § 3602 (b).
4. At all times relevant to this complaint, Plaintiff is an "aggrieved" person as defined by 42 U.S.C. § 3602 (i)(1)(2), 15 U.S.C. § 1691 (a) (1).
5. At all times relevant to this complaint, The Jersey City Housing Authority is awardee of Lafayette Gardens HOPE VI revitalization funding.
6. At all times relevant to this complaint, The Jersey City Housing Authority is a second-silent interest holder to the Subject Property in Newark, Delaware.

## Statement of the Issues

7. Determine whether The Jersey City Housing Authority violated the Fair Housing Act, Civil Rights Act, Executive Order Environmental Justice 12898, and Equal Credit

2

   Opportunity Act 15 U.S.C. §1691 (a) (1), and the Consumer Protection Act of 2010, 12 U.S.C § 5536 (a)(1)(A)(B).
8. Determine whether The Homeownership Contract imposed on Edwina Franklin is Unconscionable.

## Facts

7. "The Jersey City Housing Authority is a nonprofit corporation organized under the laws of the State of New Jersey to provide housing for qualified individuals in accordance with U.S. Department of Housing and Urban Development (HUD) rules and regulations" (Audit Report, 2011-NY-1007). The Jersey City Housing Authority (JCHA) in Jersey City, New Jersey, was awarded $34,140,000, under the 2001 HOPE VI Revitalization Grant, to revitalize Lafayette Housing Development, resulting in the displacement of 492 families (HOPE VI Revitalization Grant, 2001). Under the HOPE VI Revitalization Plan, The Jersey City Housing Authority proposed to do the following:

- Demolish 492 existing public housing units.
- Replace the 492 units with 300 mixed-income community units located on-site and immediately adjacent to the existing public housing site.
- Build an additional 550 units off-site.

8. According to this plan, out of a total of 850 new units, 322 would have been public housing replacement units, 292 would have been public housing rental units, and 30 would have been public lease-purchase units. According to the executed grant agreement, the Hope VI project had to have been completed no later than 54 months (4.5 years) from the date of the executed grant agreement or before October 16, 2006. Based on the Jersey City Housing Authority's submission to HUD, 492 units would have been demolished and replaced with 131 public housing units, 129 affordable rental units, and 30 homeownership units.

9. In 2005, Edwina Franklin was a 51-year resident of Lafayette Gardens Housing Development in Jersey City, New Jersey. Due to the Housing Opportunities for People Everywhere (Hope VI) Revitalization Grant, Mr. Franklin (now deceased) and Ms. Franklin were displaced to Holland Gardens Housing Development for seven years (2005-2012) following the demolition of Lafayette Gardens Housing Development.

10. Edwina Franklin is a 2012 beneficiary of the Lafayette Gardens Hope VI 2001 homeownership affordable housing program, awarded to JCHA to revitalize Lafayette Gardens to a mixed-income community that included homeownership opportunities. In 2012, Ms. Franklin was offered a Lafayette Gardens HOPE VI Homeownership loan. As a homeownership stipulation, Ms. Franklin was required to attend homeownership classes that included plumbing, electrical, carpentry, and home inspection. She completed the classes in 2005. Ms. Franklin was

3

positioned to purchase a home in 2005. However, due to environmental hazards on the property where the homeownership homes were to be built, she was displaced to Holland Gardens Housing Development for seven years.

11. Beginning in August of 2020, Ms. Franklin contacted JCHA attorney, Heather G. Suarez, with a reasonable accommodation request to move from her two-story home in Newark, Delaware to a home that offers one-level living--which would have been safer and more accommodating of her limitations due to aging and an existing handicap--without losing HOPE VI funding. The JCHA was (and is) a second-silent mortgage lien holder on the Newark, Delaware property. Ms. Franklin contacted Ms. Suarez regarding reasonable accommodations as she was both JCHA's attorney and the constructor of the homeownership contract for the Lafayette Gardens HOPE VI program. At the time, Ms. Franklin was (and is) contractually bound to live in the home for 20 years. In the event that Ms. Franklin moved from the home prior to 20 years, she would have forfeited a percentage of the HOPE VI grant dollars based on JCHA's Lafayette Gardens recapture policy, thereby losing affordable housing. According to U.S.C. § **3604** (f)(2), "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap violates the act."

**Reasonable Accommodation Request Denied**

12. The JCHA denied Ms. Franklin's reasonable accommodation request on the following dates:
   1. October 14, 2020
   2. January 13, 2021
   3. January 12, 2023

   Under the Fair Housing Act, the JCHA refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling violates 42 U.S.C. § 3604 (f)(3)(B); and Del. C § 4603 A (a)(2). Further, to discriminate in the sale, including mortgage process of a rental or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of an individual's handicap. 42 U.S.C 3604 § F(1)(A); 6 Del.C § 4603 (b)(1)

   The Joint Statement of The Department of Housing and Urban Development and The Department of Justice, 2004 enacts that "a reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling" (internal quotation marks omitted).

   The JCHA denial of a reasonable accommodation request has a disparate impact on Ms. Franklin, a disabled individual. A refusal to make reasonable accommodations in rules,

policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling violates 42 U.S. Code § 3604 (F)(3)(B).

13. The Jersey City Housing Authority is a "creditor" within the meaning of the ECOA, 15 U.S.C. § 1691 a (e) as it engages in "residential real estate transaction" within the meaning of the FHA U.S.C. § 3605.

14. The JCHA engaged in discriminatory lending practices that systematically structured second mortgage(s) for Lafayette Gardens Housing Authority residents under the Hope VI program, which then resulted in adherence to harsher terms and conditions than standard lending practices for any other program in JCHA's portfolio, deterrence from legal action, and became oppressive in its default remedies for Lafayette Gardens residents that discouraged homeownership.

15. JCHA's homeownership loans were specifically targeted at Lafayette Gardens residents, African Americans and were structured to aid in defaulting loans and to deter homeownership. Further, under the Hope VI program, JCHA took over seven years to issue a second-silent mortgage with a 20-year lien for Ms. Franklin. The Lafayette Gardens HOPE VI homeownership program was the only program in its portfolio with such restrictions.

16. **Dwight Street Homes vs. Lafayette Gardens Homeownership Plan**

The JCHA engaged in predatory lending targeted towards Lafayette Gardens residents by extending credit on more onerous terms, resulting in disparate treatment of Lafayette Gardens residents. Reverse Redlining is a type of discrimination that is prohibited under the FHA, ECOA and Regulation B. The JCHA's actions, policies, and practices are prohibited by the following:

   a. Discrimination on the basis of race and/or national origin in making available or in the terms and conditions of, residential real estate transitions 42 U.S.C. § 3605 (a)
   b. Discrimination against applicants with respect to credit transactions on the basis of race, color and/or national origin in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (a) (1)

17. The Equal Credit Opportunity Act (ECOA) (12 CFR part 202) prohibits discrimination in any aspect of credit transaction. The Discriminatory Conduct Under the Fair Housing Act (24 CFR Part 100), a HUD regulation, prohibits discrimination in mortgage lending. Per JCHA Interdepartmental Memo dated May 23, 2012, the JCHA used funding from the Dwight Street Homeownership program (HUD Project Number #NJ39-P009-020), a 1990s homeownership program already in place before Ms. Franklin's displacement to Holland Gardens, and before Lafayette Gardens proposal submission to HUD for Hope VI. It took JCHA more than seven years to offer funding under the Dwight Street Homes program to Ms. Franklin.

18. In part, the contract terms state the following:

"Mortgage Recapture: There is a one hundred (100%) percent recapture in years zero (0) to five (5) years. Thereafter, the mortgage balance is reduced seven (7%) percent of the original amount

5

in years six (6) to sixteen (16). There is a six (6%) percent reduction in the original amount in years seven (7) to nineteen (19). There is a five (5%) percent reduction in year 20 (twenty)".

In review of Attorney Suarez's response, dated October 14, 2020, which included Exhibits A thru L, Ms. Franklin discovered the following:

1. The Jersey City Housing Authority's recapture policy for Lafayette Gardens residents is harsher in its terms and conditions than standard lending practices for any other program in JCHA's portfolio.

In the HOPE VI Dwight Street contract, loans are forgiven in ten years, compared to loans for Lafayette Gardens HOPE VI homes that are forgiven in 20 years. Loan forgiveness is given in years six through ten, but double that for Ms. Franklin's loan forgiveness schedule. For example, approximately $14,583 is forgiven each year under one program, while Ms. Franklin's plan is reduced by $7,700 each year.

(a) In General. -- It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin (42 U.S.C. 3605 § 805, Discrimination in Residential Real Estate-Related Transactions).

19. The JCHA was awarded 34,140,000 US dollars in 2001 to revitalize Lafayette Gardens, which included homeownership for 30 Lafayette Gardens families. The JCHA executed grant agreement dated April 23, 2002. According to the executed grant agreement, construction activities were to commence within five months and be completed in five years. The demolition and revitalization of Lafayette Gardens and homeownership opportunities should have been made available conceivably by October 16, 2006. Ms. Franklin was displaced from Lafayette Gardens from September 2005 to June 2012. As mentioned, Ms. Franklin was a 51-year resident of Lafayette Gardens who was dislocated for seven years. In 2012, the JCHA imposed a 20-year second-silent mortgage for Ms. Franklin.

20. JCHA violated Title VI, which prohibits discrimination based on race, color, or national origin under any program receiving federal financial assistance. Title VI, 42 U.S.C. § 2000d et seq.

**Two policies that address discrimination in lending are the Equal Credit Opportunity Act and FHA**.

Policy Statement on Discrimination in Lending; Notice Department of Housing and Urban Development

21. According to the Policy Statement on Discrimination in Lending, the policy applies to all lenders, including mortgage brokers, issuers of credit cards, and any other person who extends credit of any type. Discrimination in lending on the basis of race or other prohibited factors is destructive, morally repugnant, and against the law (Docket No. N-94-3751; FR-3706-N-01).

> A portion of the Policy Statement on Discrimination in Lending states the following: A number of federal statutes seek to promote fair lending.  For example, the Home Mortgage Disclosure Act (``HMDA''), 12 U.S.C. 2801 et seq., seeks to prevent lending discrimination and redlining by requiring public disclosure of certain information about mortgage loan applications.  The Community Reinvestment Act (``CRA''), 12 U.S.C. 2901 et seq., seeks affirmatively to encourage institutions to help to meet the credit needs of the entire community served by each institution covered by the statute, and CRA ratings take into account lending discrimination by those institutions.  The Americans with Disabilities Act, 42 U.S.C. 12101 et seq., prohibits discrimination against persons with disabilities in the provision of goods and services, including credit services.  This policy statement, however, is based upon and addresses only the Equal Credit Opportunity Act (``ECOA''), 15 U.S.C. 1691 et seq., and the Fair Housing Act (``FH Act''), 42 U.S.C. 3601 et seq, the two statutes that specifically prohibit discrimination in lending.

The Equal Credit Opportunity Act (ECOA) prohibits discrimination in any aspect of a credit transaction which includes any extension of credit.  (quotation marks omitted).  The ECOA prohibits discrimination on race, color, religion, sex, marital status.  The FHA prohibits discrimination in all aspects of residential real-estate transactions, including but not limited to purchasing real estate loans and FHA prohibits discrimination based on handicap (Policy Statement on Discrimination in Lending, Docket No. N-94-3751; FR-3706-N-01).

*Under the ECOA and FHA, a lender may not do the following because of a prohibitive factor:*

1. Fail to provide information or services or provide different information or services regarding any aspect of the lending process, including credit availability, application procedures, or lending standards.  (Policy Statement on Discrimination in Lending, Docket No. N-94-3751; FR-3706-N-01).
2. Vary terms of credit offered, including amount, interest rate, duration, or type of loan, treat a borrower differently in servicing a loan or invoking default remedies or use different standards for pooling or packaging a loan in the secondary market (Policy Statement on Discrimination in Lending, Docket No. N-94-3751; FR-3706-N-01).

*Environmental Justice*

22.  Recipients of Housing and Urban Development assistance, including Public Housing programs, including Housing for People Everywhere VI grants, are responsible for conducting environmental reviews in accordance with 24 CFR Part 58. "By Executive Order 12898, (a) public housing may be developed only in environmentally sound and desirable locations that will avoid disproportionately high and adverse environmental effects on minority and low-income communities; and (b) proposed activities may not have the effect of excluding or denying persons (including populations) from participation in or benefits from those activities, or

7

subjecting persons (including populations) to discrimination because of their race, color, or national origin." Accordingly, PHAs must complete an environmental review on each affected site per 24 CFR Part 50.

23. According to JCHA's 2012 Interdepartmental Memorandum, JCHA revised its homeownership plan due to environmental issues, i.e., contaminated soil, stating that remediation would not be cost-effective to build homes under the Lafayette Gardens Hope VI program on the property of Lafayette Gardens.

24. The JCHA revitalization plan included 30 homeownership opportunities that were reduced to a first-come-first-serve basis for six Lafayette Gardens families. Despite having participated in all the required classes under the Lafayette Gardens HOPE VI homeownership program, Ms. Franklin's participation was reduced to a first-come-first-serve applicant, and with onerous terms than Dwight Street Homes. Imposing more onerous terms on HOPE VI Lafayette Gardens families based on prohibitive factors aid in systemic discrimination, reverse redlining, and the discouragement of homeownership; such disparate treatment violates the FHA and ECOA.

25. Due to environmental issues, the JCHA delayed homeownership opportunities for over seven years for the Lafayette Gardens residents, leaving families without the opportunity to purchase a home under HOPE VI, then once the funding became available under the Dwight Street Homes Homeownership program, the JCHA imposed a 20-year second-silent lean.

26. As a result of the JCHA's discriminatory conduct, Ms. Franklin suffered actual damages, loss of affordable housing opportunities that align with her needs, emotional and physical distress, humiliation, and embarrassment.

**Fair Housing Act Violations**

27. The aggrieved, Edwina Franklin, as defined in 42 U.S.C § 3602 (i) and 15 U.S.C§ 1691 e (1), alleges The Jersey City Housing Authority violated the Fair Housing Act, United States Code, and implementing regulations as described within and subsequent paragraphs.

28. Defendant Jersey City Housing Authority policies, practices, and actions resulted in violation of the following:

a. Discrimination on the basis of race, color and national origin making available residential real estate-related transaction, or in the terms and conditions of residential real estate transaction, in violation of the Fair Housing Act, 42 U.S.C § 3605 (a)
b. The making unavailable or denial of dwellings to persons because of race, color, national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604 (a), 24 C.F.R § 100.50 (b)(3)

c. Discrimination on the basis of race, color, national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the

sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C.§ 3604 (b0, 24 C.F.R §§ 100.50 (b)(2)

d.  Discrimination against applicants with respect to credit transactions on the basis of race, color, and national origin and discouragement of applications on the basis of race, color, and national origin in violation of the Equal Credit Opportunity Act,, 15 U.S.C §§ 1691 (a)(1)

e. Executive Order Environmental Justice 12898

f.  U.S.C. § 3604 (f)(2), "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap violates the act.

**Request for Relief**

29.   Align the Lafayette Gardens Homeownership program with the Dwight Street Homeownership program.

30.  Award monetary damages to Plaintiff.

31. The Plaintiff demands trial by jury.


Respectfully Submitted,

*Edwina Franklin   April 4, 2023*

Edwina Franklin, Pro Se

9